***FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Crim. No. 04-267 (FLW) |
| v. | : | |
| | : | |
| JAMES MCNAIR, | : | OPINION |
| | : | |
| Defendant. | : | |

**WOLFSON, Chief Judge:**

James McNair, a prisoner currently serving a 96-month sentence at FCI Fairton ("Fairton"), proceeding *pro se*, has filed a second motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). The Court previously terminated Defendant's motion for failure to exhaust administrative remedies. In the instant motion, Defendant contends that there are "extraordinary and compelling reasons" to warrant reduction of his sentence based on his good behavior and rehabilitation, as well as his risk of contracting COVID-19. For the reasons set forth below, Defendant's Motion is **DENIED**. Defendant's claim for compassionate release based on the COVID-19 pandemic is denied without prejudice to Defendant exhausting his administrative remedies.

**I.     BACKGROUND**

On April 28, 2005, the Court sentenced Defendant to a 96-month term of imprisonment on a conviction of conspiracy to obstruct, delay, and affect commerce by robbery, in violation of 18 U.S.C. § 1951(a). Defendant is projected to be released on January 12, 2022.

On April 8, 2019, Defendant filed his first motion for reduction of sentence pursuant to the First Step Act, arguing that his good behavior while incarcerated and rehabilitation were

"extraordinary and compelling" reasons for such a reduction. (*See* ECF No. 24.) However, because Defendant conceded that he had failed to exhaust his administrative remedies as required by 28 U.S.C. § 3582(c)(1)(A), the Court terminated Defendant's motion without prejudice. (*See* ECF No. 30.)

Thereafter, on August 12, 2019, Defendant advised the Court that 30 days had lapsed since he submitted a request for reduction of sentence to the Fairton Warden and, accordingly, requested that the Court consider his motion for reduction of sentence.[1] (*See* ECF No. 32.) Since August 2019, Defendant has submitted numerous letters to the Court in support of his motion. (*See* ECF Nos. 31, 32, 33, 34.) In essence, Defendant seeks a reduction of his sentence based on his demonstrated good behavior during his incarceration. Specifically, Defendant highlights his educational and vocational achievements, which include, *inter alia*, completing an apprenticeship in Industrial Housekeeping, the National Center for Construction Education and Research ("NCCER") Core Curriculum, the NCCER Carpentry Level I course, and a real estate and mortgage course. (ECF No. 31, at 4, 16.) Defendant also highlights his involvement in mentorship programs, such as the Inmate Awareness Rehabilitation Program and that he plans to start his own mentorship program for at-risk youth, which he states will begin operating upon his release. (*Id.* at 17.) On April 6, 2020, Defendant submitted an addendum to his motion in light of the COVID-19 pandemic. (*See* ECF No. 35.) In that regard, Defendant contends that he is at high risk of suffering complications if he were to contract COVID-19 because he suffers from asthma and was

---

[1] The Acting Warden of FCI Fairton eventually responded to Defendant's request on October 17, 2019, finding that Defendant's "remorse, shame and apologetic statements accepting responsibility for [his] criminal behavior do not qualify as compelling reasons to warrant a reduction of sentence." (ECF No. 38-1, at 2.) Nor did the Acting Warden find that Defendant's participation in educational programming at FCI Fairton "qualif[ied] as compelling reasons to warrant a reduction in sentence." (*Id.*)

recently treated for acute bronchopneumonia. (*Id.*) For these reasons, Defendant seeks a reduction of his sentence to time served.

The Government opposes Defendant's motion. First, the Government argues that the Court should not consider the motion on the merits because Defendant did not present any medical condition as a reason for relief to the Warden. Accordingly, the Government asserts that the entire motion should be denied without prejudice to Defendant's exhaustion of administrative remedies. Moreover, the Government contends that, to the extent the Court chooses to consider Defendant's exhausted claim on the merits, Defendant has not demonstrated "extraordinary and compelling" reasons to justify his release under the First Step Act.

## II.   DISCUSSION

Once a federally imposed sentence commences, a district court has limited authority to modify that sentence. *Dillon v. United States*, 560 U.S. 817, 825 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." (alterations in original)). One such authority for modifying a sentence is found in the recently enacted First Step Act, which allows a defendant to be afforded compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides, in relevant part:

> (c) Modification of an imposed term of imprisonment. The court may not modify a term of imprisonment once it has been imposed except that—
>
>   (1) in any case—
>
>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the

3

> term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the facts set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
> > (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c)(1)(A)(i). In other words, a defendant seeking a reduction in his sentence under the First Step Act "bears the burden of satisfying both that he has (1) exhausted remedies before seeking judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Sellers*, Crim. No. 10-434, 2020 WL 19728862, at *1 (D.N.J. Apr. 24, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

    a. **Exhaustion**

The Government first argues that Defendant's motion should be denied because he has not exhausted his administrative remedies on his claim that he is entitled to compassionate release based on the risks associated with COVID-19.[2] In that connection, the Government maintains that issue exhaustion applies to motions under § 3582(c)(1)(A). Defendant, however, contends that he is not required to present to the BOP every "extraordinary and compelling" reason that supports his compassionate release, and maintains that his July 2019 application to the Warden was sufficient to permit his COVID-19 claim to proceed.

Section 3582(c)(1)(A) provides that only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

---

[2] There is no dispute that Defendant exhausted his claim based on his good behavior and rehabilitation.

warden of the defendant's facility," may a court entertain a motion for compassionate release. As this Court has previously determined, this exhaustion requirement is strictly applied and is not susceptible to any judicially created exceptions. *See United States v. Epstein*, No. 14-287, 2020 WL 1808616, *2–5 (D.N.J. Apr. 9, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). However, district courts have disagreed over whether "issue exhaustion" applies to motions under § 3582(c)(1)(A). *Compare United States v. Torres*, ___ F. Supp. 3d ___, 2020 WL 2815003 (S.D.N.Y. June 1, 2020); *with United States v. Valenta*, Crim. No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020) ("To properly exhaust administrative remedies, . . . the administrative complaint must raise the same claims asserted in the federal court filing.") (citing *Gadra-Lord v. Doe*, 736 F. App'x 30, 32 (3d Cir. 2018)).[3]

For example, in *Torres*, the defendants had filed requests for reduction of sentence with the warden of FCI Fairton in November 2019 based on their rehabilitation. 2020 WL 2815003, at *2. Thereafter, in April 2020, defendants filed a motion under § 3582(c)(1)(A) in the district court, where they argued that they were entitled to a reduced sentence based not only on their good behavior, but also their risk of contracting COVID-19 while incarcerated. *Id.* at *3. The *Torres* court, relying on the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103, 107 (2000), held

---

[3] *See also United States v. Pitt*, Crim. No. 97-108, 2020 WL 2098272, at *2 (M.D. Pa. May 1, 2020) (finding motion for reduction of sentence was unexhausted where defendant's request to the warden "was not based on the COVID-19 pandemic or any other medical reasons"); *United States v. Wilson*, Crim. No. 14-209, 2020 WL 1975082, at *4 (E.D. Pa. Apr. 24, 2020) (finding that prior request to BOP for compassionate release did not satisfy exhaustion requirement where defendant did not base his request on "his preexisting health conditions present during the COVID-19 pandemic"); *United States v. Mogavero*, Crim. No. 15-74, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden.").

that defendants "did not have to address the COVID-19 pandemic with the BOP before raising that issue in their compassionate-release motion." *Id.* at *5.[4]

In *Sims*, the Supreme Court considered an appeal from a Social Security claimant whose claims had been denied. 530 U.S. at 105. On appeal, the claimant raised new issues that had not been raised before the Social Security Appeals Council and the Fifth Circuit found the newly raised claims to be waived for failure to exhaust. *Id.* at 105–06. The Supreme Court reversed, explaining that "[t]he basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts." *Id.* at 108–09. In that connection, the Court explained that where "an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion is much weaker." *Id.* at 110. Because Social Security proceedings are conducted in "an informal, nonadversary manner" and the issues are primarily identified by the Appeals Council, the Court determined that issue exhaustion was not required in that context. *Id.* at 111–12.

Guided by *Sims*, the *Torres* court reasoned that because the procedure for requesting compassionate release is similarly informal and of an "inquisitorial" nature, issue exhaustion is not required for motions seeking compassionate release under the First Step Act. *See Torres*, 2020 WL 2815003, at *5. Moreover, the *Torres* court asserted that because the BOP is in the best position to determine whether an inmate is entitled to compassionate release, it "does not depend much, if at all, on claimants to identify issues for review." *Id.* (quoting *Sims*, 530 U.S. at 112). I

---

[4] Other district courts have agreed with *Torres*. *See, e.g.*, *United States v. McDonald*, Crim. No. 09-656, 2020 WL 3638280, at *3 (D.N.J. July 2, 2020) (finding that defendant satisfied the exhaustion requirement "notwithstanding the lack of COVID-19 concerns in his prior submissions" to the warden); *United States v. Brown*, ___ F. Supp. 3d ___, 2020 WL 2091802, *4 (S.D. Iowa Apr. 29, 2020) ("[P]recedent dictates that it is inappropriate to require issue exhaustion. Defendant may raise new arguments, including a sudden global pandemic, in his motion to the Court.").

respectfully disagree. While *Sims* addressed the question of whether issue exhaustion is applicable to certain statutory or judicially created exhaustion schemes, it did not create a bright-line rule. Indeed, the holding of *Sims*, that issue exhaustion is not required in Social Security appeals, is distinguishable because it was based on the unique structure of Social Security proceedings. *See Sims*, 530 U.S. at 110–11. Critically, the *Sims* Court highlighted that an issue exhaustion requirement is inappropriate in such circumstances because the Social Security Appeals Council, "does not depend much, if at all, on claimants to identify issues for review," and the Social Security Administration regulations do not require issue exhaustion. *Id.* at 112. While *Torres* suggests that the BOP similarly does not rely on inmates to identify all grounds that may exist for compassionate release, there is simply no support for that suggestion. Indeed, the opposite is true. BOP regulations require that requests for compassionate release be made in writing and contain, at a minimum, "[t]he extraordinary or compelling circumstances that the inmate believe warrant consideration." C.F.R. § 571.61(a)(1); *see also United States v. Alderson*, No. 18-20348, 2020 WL 4696599, at *2 (E.D. Mich. Aug. 13, 2020) ("BOP regulations state that a prisoner must present to the agency '[t]he extraordinary or compelling circumstances that the inmate believes warrant consideration.'"); *United States v. Gordon*, ___ F. Supp. 3d ___., 2020 WL 4696596, at *2 n.2 (E.D. Mich. Aug. 12, 2020) ("If the alleged 'extraordinary or compelling circumstances' are not presented, the BOP has not had an opportunity to address them and the prisoner's claim has not been fully exhausted.").[5] In other words, the regulations require the inmate to identify the compelling reasons justifying release. *Sims* counsels that where agency regulations require issue

---

[5] While the BOP has not updated its regulations since the passage of the First Step Act, there is no suggestion that it no longer requires an inmate to identify the extraordinary or compelling reasons that warrant the inmate's compassionate release.

exhaustion, "courts reviewing agency action regularly ensure against the bypassing of that requirement by refusing to consider unexhausted issues." 530 U.S. at 108. Here, the Court must enforce the BOP regulations to ensure that requests for compassionate release are properly exhausted. The *Torres* decision, on the other hand, permits inmates to bypass the exhaustion requirement.[6]

The explicit statutory exhaustion mandate set forth by § 3582(c)(1)(A) further cautions against finding such an exception. While "[j]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions . . . , a statutory exhaustion provision stands on a different footing'" and "courts have a role in creating exceptions only if Congress wants them to." *United States v. Montanez*, ___ F. Supp. 3d ___, 2020 WL 2183093, *6 (N.D.N.Y. May 5, 2020) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016)). There is no indication that Congress intended such an exception here. It is clear from the First Step Act that Congress intended the BOP to be able to consider requests for compassionate release in the first instance. *See* § 3582(c)(1)(A) (providing that "the court . . . , upon motion of the defendant after the defendant has

---

[6] Furthermore, the *Torres* court's reliance on *Sims* ignores significant differences between the procedures for Social Security appeals and requests for compassionate release. While the First Step Act was intended to expand the use of compassionate release, *see United States v. Rodriguez*, ___ F. Supp. 3d ____, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020), there is no indication that Congress intended the BOP to do a searching review of a defendant's record like that conducted by the Social Security Appeals Council in assessing a claim for benefits. There is no doubt that BOP's review of a request for compassionate release is not an adversarial proceeding, but it is distinct from a social security proceeding where an administrative law judge is presented with a developed record from which it may determine if an award of benefits is appropriate. On the other hand, when an inmate submits a request for compassionate release, the BOP's review is limited to the reasons set forth therein and there is no requirement that the BOP investigate other reasons that may warrant an inmate's release. For example, here, Defendant's request to the Warden provided only that he was entitled to release based on his rehabilitation and his good behavior during his incarceration. Those were the only grounds considered by the Warden in denying the request. The Warden did not consider any possible medical condition or other "extraordinary and compelling" reason for release because Defendant did not suggest that any other reason existed, particularly since the COVID-19 pandemic had not yet occurred in 2019 when he submitted his request.

fully exhausted *all administrative rights to appeal* . . . may reduce the term of imprisonment (emphasis added)); *see also United States v. Gross*, ___ F. Supp. 3d ___, 2020 WL 1673244, at * (S.D.N.Y. Apr. 6, 2020) ("[T]he statute includes an exhaustion requirement in recognition of the fact that 'BOP is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan.'"). Permitting inmates to bypass that requirement by presenting one reason for relief to the BOP and another to the Court would create an end-run around the exhaustion requirement and deprive the BOP of the opportunity to consider the request. *See Alderson*, 2020 WL 4696599, at *2 ("Allowing a prisoner to present one description of his circumstances to the BOP and another to the court would undermine the statutory scheme of administrative exhaustion that Congress purposefully designed.").

      The Court declines to create an exception to § 3582(c)'s exhaustion requirement to accommodate the exceptional circumstances presented here and by other COVID-19 related compassionate release motions. *See United States v. Curie*, No. 16-386, 2020 WL 4558459, *2 (N.D. Ohio June 5, 2020) (declining to "'engraft an unwritten special circumstances exception onto' § 3582(c)(1)(A)'s exhaustion requirement" and finding that defendant was required to exhaust all claims in support of compassionate release). Accordingly, the Court finds that Defendant's claim for compassionate release based on COVID-19 is unexhausted and, therefore, the Court has no authority to consider Defendant's request in that regard. The Court denies this portion of Defendant's motion without prejudice to Defendant renewing his motion once he has either exhausted all administrative remedies on his COVID-19 claim for compassionate release or the BOP has failed to respond to his request within 30 days.

### b. Extraordinary and Compelling Reasons

While I find that Defendant's COVID-related claim to be unexhausted, I will consider his exhausted claim related to his good behavior and rehabilitation.

Congress did not define the term "compelling and extraordinary reasons," but instead directed the Sentencing Commission to define the term. *See* 28 U.S.C. § 994(t) (providing that the Sentencing Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). The Sentencing Commission previously defined that term but has not updated its Policy Statement since the passage of the First Step Act. *See Rodriquez*, 2020 WL 1627331, at *3; *see also* U.S. Sentencing Guidelines Manual ("U.S.S.G."), § 1B1.3, Application Note 1 (U.S. Sentencing Comm'n 2018). Nevertheless, the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, but it "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *Rodriquez*, 2020 WL 1627331, at *4 (alteration in original) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 581–82 (M.D.N.C. 2019)). The Policy Statement provides that a defendant may show extraordinary and compelling reasons for compassionate release based on the medical condition of the defendant, the age of the defendant, the defendant's family circumstances, or for "other reasons." U.S.S.G. § 1B1.13, Application Note 1(A)–(C).

Defendant seeks compassionate release under the catch-all provision, which provides that "other reasons" may be sufficient where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)". U.S.S.G. § 1B1.13,

Application Note 1(D). Because, as noted above, the Policy Statement has not been updated since the passage of the First Step Act, courts have struggled to determine whether "a court—rather than the BOP—can evaluate what falls into the catch-all provision." *United States v. Catanzarite*, Crim. No. 18-0263, 2020 WL 2786927, at *3 (D.N.J. May 29, 2020). In that connection, some courts have determined that the courts "may independently assess whether 'extraordinary and compelling reasons' exist" under the catch-all provision, *see Rodriguez*, 2020 WL 1627331, at *2, while others have concluded that "relief under Subsection D requires a finding from the BOP that the inmate has extraordinary circumstances that merit relief outside of those circumstances specifically enumerated in the policy." *See United States v. Mollica*, Crim. No. 14-329, 2020 WL 1914956, at *3 (N.D. Ala. Apr. 20, 2020). Nevertheless, the Court need not assess its authority to grant relief under the catch-all provision because Defendant has not demonstrated that any extraordinary circumstances exist to warrant a reduction in his sentence.

Defendant contends that he is entitled to compassionate release based on his "exemplary good behavior and [his] accomplishments" during his incarceration and because his "self-improvement is truly beyond the ordinary." (*See* ECF No. 31, at 3.)[7] However, the Policy Statement makes clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason." U.S.S.G. § 1B1.13, Application Note 3; *see also* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Instead, a defendant's rehabilitation may only "contribute to extraordinary and compelling reasons." *Rodriquez*, 2020 WL 1627331, at *10. While Defendant acknowledges this

---

[7] Defendant further submits that he "can be of assistance and benefit to the educational and social areas of our nation" and makes a number of statements regarding increases in youth violence throughout the country. (*See* ECF No. 31, at 15.) Such vague assertions, however, do not present an extraordinary and compelling reason to warrant compassionate release.

11

limitation, he, nonetheless, argues that his educational achievements are separate from his claims of rehabilitation. This distinction, however, holds no weight. Defendant asserts that "[t]he knowledge and skills [he has] acquired [have] prepared [him] to be of great service and assistance in [his] community," specifically in assisting at-risk youth. (ECF No. 31, at 11.) However, Defendant's educational achievements are evidence of rehabilitation and they do not present a distinct category of "extraordinary and compelling reasons." While the Court commends Defendant for taking these efforts to rehabilitate and educate himself, those efforts, alone, cannot demonstrate "extraordinary and compelling reasons" to warrant his release. Accordingly, Defendant's motion for a reduction of sentence based on his rehabilitation and good behavior is denied.[8] However, if Defendant files a renewed motion for reduction of sentence after exhausting his medical claim, the Court will reconsider his rehabilitation in conjunction with any medical issues to determine whether extraordinary and compelling reasons justify his release.

### III.   CONCLUSION

For the foregoing reasons, Defendant's Motion is denied. Defendant's claim for compassionate release based on the COVID-19 pandemic is denied without prejudice to Defendant exhausting his administrative remedies. An appropriate Order accompanies this Opinion.

DATED:     August 26, 2020                         /s/ Freda L. Wolfson
                                                   Freda L. Wolfson
                                                   U.S. Chief District Judge

---

[8]   As indicated above, if a court finds "extraordinary and compelling" reasons justify a modification in a prisoner's sentence, the court must also decide whether to grant compassionate release by weighing the sentencing factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable. Because I find that "extraordinary and compelling" reasons are not present here, I do not reach the second part of the analysis.